IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KERN RIVER GAS TRANSMISSION COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>8.47 ACRES OF LAND, et al.,<br><br>Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:02-CV-694 TC |

Last November, to resolve disagreements between Plaintiff Kern River Gas Transmission Company and Defendant Salt Lake City Corporation regarding the issue of just compensation for Kern River's taking of airport land, Kern River filed a Motion in Limine, a Motion for Partial Summary Judgment, and a Motion for Revised Scheduling Order. For the reasons set forth below, the court grants Kern River's motions.

**Brief Procedural Background[1]**

On March 20, 2004, Kern River filed a Fourth Amended Complaint seeking condemnation of an underground pipeline easement running through land owned by the City, including unimproved real estate located in the northwest corner of the Salt Lake City

---

[1]This order does not contain a factual background section. Instead, facts are set forth throughout the order to the extent they are necessary to the issues currently being decided. A more complete factual background can be found in previous orders of this court regarding Kern River's action against Salt Lake City. (See, e.g., June 21, 2004 Order (Dkt # 245).)

International Airport. On June 21, 2004, the court granted Kern River a Certificate of Immediate Occupancy. (See Dkt # 245.) On March 14, 2005, the court granted Kern River's Motion for Summary Judgment, finding that Kern River had satisfied the elements for condemning the property under the Natural Gas Act, and ordering condemnation of a permanent easement for Kern River's interstate natural gas pipeline. (See Dkt # 273.)

The only issue left for trial between Kern River and the City is the amount of just compensation for the taking of the City's airport property. The trial is currently scheduled for November 6, 2006. The final pretrial conference is set for October 18, 2006.

**1.     Motion in Limine**

    a.     Legal Standards

"The Fifth Amendment to the United States Constitution provides that private property shall not be taken for public use without just compensation." United States v. Sowards, 370 F.2d 87, 89 (10th Cir. 1966). "Just compensation is measured by the market value of the property at the time of the taking." Id. The "burden is upon the owner to establish by competent evidence the compensation to which he is entitled." United States v. 494.10 Acres of Land, 592 F.3d 1130, 1132 (10th Cir. 1979). "Qualified and knowledgeable witnesses may give their opinion or estimate of the value of the property taken, but to have probative value, that opinion or estimate must be founded upon substantial data, not mere conjecture, speculation or unwarranted assumption." Sowards, 370 F.2d at 92. "[S]peculative and remote possibilities cannot become a guide for the ascertainment of value in judicial ascertainment of the truth." Wilson v. United States, 350 F.2d 901, 909 (10th Cir. 1965), citing Olson v. United States, 292 U.S. 246, 255 (1934).

The trial court has the obligation to screen evidence of potential uses before a jury may hear it. Fed. R. Evid. 103(c), 104(a); Fed. R. Civ. P. 71A(h); <u>United States of America v. 158.24 Acres of Land</u>, 696 F.2d 559, 563 (8th Cir. 1982) (trial judge "should decide whether the landowner had produced credible evidence that a potential use is reasonably practicable and reasonably probable within the near future"); <u>United States of America v. 341.45 Acres of Land</u>, 633 F.2d 108, 111 (8th Cir. 1980) ("[I]t is the responsibility of the trial judge under Rule 71A(h) to screen the proffered potential uses and exclude from the jury consideration of those which have not been demonstrated to be practicable and reasonably probable uses").

      b.     <u>Kern River's Request</u>

Kern River seeks an order barring the City from presenting at trial "speculative" evidence regarding possible future construction of an airport runway on the condemned airport property and the anticipated costs to relocate the pipeline if airport expansion occurs on that property. Similarly, Kern River seeks an order barring introduction of evidence supporting "unmeritorious" legal theories. Those theories include the assertion that the loss of a possible runway location and the costs for pipeline relocation would harm the airport, thereby justifying consideration of these and other related problems in determining just compensation.

> Kern River's motion in limine timely asks for a ruling in three discrete, well-defined areas: (1) no evidence be presented to the jury of compensation based on future airport expansion, in particular a runway or other facilities, in the area of the Loop Line [as defined in Kern River's Mem. in Supp. at 4]; (2) no evidence be presented to the jury of compensation based on Loop Line relocation costs; and (3) no evidence be presented to the jury in support of any of the legal theories that failed during the occupancy hearings.

(Kern River Reply at 7.) If the motion in limine is granted, the issues for discovery will also be narrowed (another of Kern River's goals).

The City contends that the Motion in Limine (1) is premature and too broad, and (2) improperly seeks to exclude relevant evidence. The court disagrees.

First, the motion is neither premature nor too broad. Motions in limine are properly used early in litigation to narrow the issues and reasonably limit discovery. As Kern River notes,

> such motions are commonly and appropriately directed at categories or classes of evidence or theories without the need to identify or rule on the individualized pieces of evidence. . . .   See, e.g., FDIC v. United Pac. Ins., 20 F.3d 1070, 1075 (10th Cir. 1994) (affirming trial court's grant of motion in limine excluding "all evidence" FDIC was holder in due course); . . . United States v. 8,968.06 Acres, 326 F. Supp. 546, 550 (S.D. Tex. 1971) (granting motion in limine to exclude all evidence in condemnation proceeding relating to the initiation, planning, or contemplation of government's planned reservoir project).

(Kern River Reply at 4.)  See also Nichols on Eminent Domain, § 14A.04[2][b] ("Because of the expense both to the condemnor and condemnee in seeking additional expert testimony . . . it may be best for both parties to a condemnation proceeding to use . . . motions in limine to determine the legal effect and admissibility of . . . evidence.").

Second, the evidence of possible future expansion is speculative and so is not relevant to a determination of just compensation. The standard for valuing property for just compensation was set forth in Olson v. United States, where the Supreme Court stated that "[t]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered . . . ." 292 U.S. 246, 255 (1934) (emphasis added).[2]  In earlier proceedings, the City claimed that the western area of the Airport (through which the pipeline easement runs) "has been identified as the best location for a future runway at the

---

[2]The subject of the highest and best use for the condemned property is not before the court right now.

Airport" and that "[i]t is almost a certainty that the Airport will require the construction of an additional runway within a 40-80 year time frame." (Dkt # 229 at p. 10, ¶¶ 16, 18.) The court found the City's claim to be too speculative to be considered for purpose of issuing the order for immediate occupancy:

> Salt Lake City points to the possibility that, in forty to eighty years, a new runway may be built on the currently undeveloped land below which the expansion pipeline lies, which could create a conflict with the current placement of the expansion pipeline. According to Salt Lake City, this possibility of runway expansion when considered in conjunction with the terms of Kern River's proposed easement is "tantamount to destruction" of the Airport property.
>
> But the basis for Salt Lake City's argument is too speculative to have any bearing on Kern River's current authority to condemn.

(June 21, 2004 Order (Dkt # 245) at 8.)

Since 2004, an independent third party consultant for the City has been developing a new Airport Layout Plan for the airport. According to the City,

> [p]reliminary information from the Consultant indicates . . . that the additional runway will be required within 20-25 years from today [January 2006]. Typical processes to plan, obtain approvals, design and construct an airport runway require approximately ten years, and based on the Consultant's preliminary information, the City would likely need to initiate these processes within the next 10-15 years.

(SLC Opp'n Mem. at 6-7 (internal citations omitted).)

Setting aside the fact that the consultant's study is not finished, the City's latest proffer of a possible expansion in twenty to twenty-five years (or even ten to fifteen years) still does not satisfy the "reasonably near future" standard. See, e.g., United States v. Consolidated Mayflower Mines, Inc., 60 F.3d 1470, 1475-76 (10th Cir. 1995) (applying Olson standard to preclude consideration of development of mineral deposits); United States v. Buhler, 305 F.2d 319, 328-

29 (5th Cir. 1962) (reversing decision allowing compensation based on residential use because the land was subject to a ten-year lease for rice farming).[3]

And evidence of potential expansion is not relevant to severance or immediate damages because the evidence presented to support those aspects of just compensation would be speculative. As Kern River states, "[b]ecause the City's proposed future expansion is speculative as a matter of law [that is, no reasonable jury could find otherwise], it cannot be used by the City as an aid to establish any type of damages, present or future." (Kern River Reply at 16.)

Finally, evidence of pipeline relocation costs is not admissible. Such costs are not compensable because the City may not unilaterally relocate Kern River's pipeline. The pipeline lies within a permanent easement granted to Kern River based on condemnation authority granted to Kern River by Congress and the Federal Energy Regulatory Commission (FERC). See 15 U.S.C. § 717f(h). If condemnees could recover from pipeline companies the cost of relocating the pipelines, the authority granted by Congress and FERC to locate the pipeline would be rendered ineffective. And, perhaps more germane to the situation, the hypothetical future costs are inextricably tied to the speculative airport expansion argument, so any evidence

---

[3]The City's calculation of time is short by a few years. The City's calculation begins in January 2006, the date the City filed its brief. But courts measure the reasonably near future from the date of the taking. See, e.g., United States v. 494.10 Acres of Land in Cowley County, Kansas, 592 F.2d 1130, 1131-32 (10th Cir. 1979) (noting that court determines just compensation by looking at the property's fair market value as of the taking date); United States v. Sowards, 370 F.2d 87, 89 (10th Cir. 1966) (same). As noted in this Order, the court holds that the date of taking is August 5, 2002. So the time frame for the potential expansion actually amounts to a period of twenty-three to twenty-eight years (or, giving the City the benefit of the doubt, thirteen to eighteen years if planning time is deducted). Regardless of how the City's proposed expansion time frame is viewed, it is "too late in time and too uncertain in contemplation." (Kern River Reply at 16.)

of such costs would be speculative. Even the City has not suggested that it will definitely incur any costs, much less what such costs would be. According to the City, the earliest it would incur any such costs would be in the year 2026 (and that assumes that the City would have the authority to oust Kern River).

For all these reasons, Kern River's Motion in Limine is granted.

**2.      Motion for Partial Summary Judgment**

Kern River, in its Motion for Partial Summary Judgment, seeks an order establishing the taking date as a matter of law. Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The parties apparently agree that the court may set the taking date as a matter of law. Rule 71A(h) of the Federal Rules of Civil Procedure "provides that, except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented." United States v. Reynolds, 397 U.S. 14, 19 (1970). And the parties agree that no material facts are in dispute. (See SLC's Opp'n Mem. at 3; Kern River's Reply at 20.)

But the parties disagree on what the taking date should be. Kern River asserts that the taking first occurred on August 5, 2002, the date Kern River entered Salt Lake City's property to begin construction of the pipeline. The City contends that no taking occurred on August 5, 2002, because Kern River's access was due to the City's consent (the parties entered into a Consent for

Access Agreement and the City issued a Temporary Construction Permit).  The City further contends that the taking occurred on March 14, 2005, when the court issued its decision granting Kern River's motion for summary judgment regarding condemnation.  (See Dkt # 273.)  No authority supports the City's position.

Kern River's suggested date is more logical and consistent with the concepts of eminent domain.  Kern River took actual physical possession of the property on August 5, 2002.  "The usual rule is that if the [condemnor] has entered into possession of the property prior to the acquisition of title [the date of the declaration of taking], it is the former event which constitutes the act of taking."  United States v. DOW, 467 U.S. 1, 21-22 (1984) (date of taking for pipeline easement was date condemnor took possession).

The City unpersuasively attempts to distinguish Kern River from a governmental entity in an effort to distinguish the eminent domain cases (including DOW) cited by Kern River.  (See SLC Opp'n Mem. at 24-26.)  The United States Supreme Court has noted that "physical appropriation" is the "paradigm of a taking" and that a "permanent physical occupation authorized by state law is a taking without regard to whether the State, or instead a party authorized by the State, is the occupant."  Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 432 nn.8-9 (1982).  The fact that Kern River acquires its eminent domain authority from the Natural Gas Act rather than the statutes by which the United States government exercises its eminent domain power is of no consequence.  Kern River is a party authorized by the federal government to take land in certain enumerated circumstances.  The "element of required acquiescence," FCC v. Florida Power Corp., 480 U.S. 245, 252 (1986), was present on

August 5, 2002.[4]

The City claims that Kern River was on the property only because the City allowed it, so Kern River's occupation at that time was not a taking. Certainly Kern River's access to the property was in a sense permissive. But the Consent for Access Agreement acknowledged Kern River's absolute right to condemn the property under the Natural Gas Act, 15 U.S.C. § 717f(h), even if the City subsequently withdrew its consent: "Nothing herein shall limit Kern River's right to eminent domain under applicable law." (Ex. 1A to SLC's Opp'n Mem., ¶ 13.) And the only reason Kern River did not file a condemnation suit until later (Kern River already had a certificate of public convenience and necessity from FERC) is that it was negotiating in good faith to try to obtain the easement through contract. Ultimately, Kern River was not able to obtain a contract for a permanent easement. And the parties were not able to agree on the amount of just compensation. Still, when Kern River went on the airport property, it had the unquestionable authority to condemn. Although the City cites to cases saying that a party with eminent domain authority under the Natural Gas Act is not rightfully on the property until authorized by the court (through the court's exercise of inherent equitable powers to issue a certificate of immediate occupancy), those cases do not address the issue of when the date of taking occurred in light of physical occupation.[5] Consequently, the City does not present any authority to support its position.

---

[4]The court notes that, based on the record, it appears that the City granted Kern River permission to enter the land and physically construct the pipeline without requiring Kern to pay for such a right. This suggests that the City knew its acquiescence was required.

[5]Even if the party was not rightfully on the property, the issue really becomes one of measuring damages for trespass rather than just compensation. But that is a different issue than the one facing the court.

Moreover, if the court were to accept the City's argument—that the possession was allowed by the City so no taking actually occurred at that point— then Kern River would essentially have had possession of City land for two and a half years without an obligation to pay for it. Such a windfall (possessing real property at no cost, with no interest having run on any valuation amount during that time) seems unsupportable. See Olson, 292 U.S. at 255 (condemnee "is entitled to be put in as good a position as if his property had not been taken. He must be made whole but is not entitled to more."). The court agrees with Kern River that the taking occurred on August 5, 2002.

Out of caution, Kern River argued, in the alternative, that if the court disagrees with Kern River's proposed date and theory that the taking occurred when Kern River took actual possession of the property, the court should reject the City's proposed date in favor of March 2, 2004, when Kern River filed and served its condemnation suit against the City.[6] (See Kern River Reply at 24.) Even though the court is persuaded by Kern River's primary argument, the following discusses why the court does not accept Kern River's alternative argument.

Kern River notes that the general rule under the Natural Gas Act is to apply the law of the state in which the property is located to determine the amount of just compensation. See 15 U.S.C. § 717f(h) ("The practice and procedure in any [pipeline company eminent domain] action or proceeding [in federal district court] shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is

---

[6]Alternatively, Kern River advocated either April 1, 2004 (the date the last extension expired on the parties' Consent to Access Agreement) or June 21, 2004 (the date the court entered its Order of Immediate Occupancy). (Kern River Reply at 25-26.)

situated"). See also, e.g., Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1199 (6th Cir. 1992) (holding that "although condemnation under the Natural Gas Act is a matter of federal law, § 717f(h) incorporates the law of the state in which the condemned property is located in determining the amount of compensation due"). In Utah, the date of the taking is the "date of service of summons." Utah Code Ann. § 78-34-11(1). But the United States Supreme Court has already established a federal rule stating that physical occupation determines the date of taking if title has not yet been acquired. As noted in Columbia Gas, the parameters of section 717f(h) must be determined by federal law, with state law filling in the gaps. Given that federal law has established the rule regarding the date of a taking, there is no need to turn to state law.

For the foregoing reasons, Kern River's Motion for Partial Summary Judgment is granted. The court holds, as a matter of law, that Kern River's taking of the City's property at issue in this condemnation action occurred on August 5, 2002.

**3.      Motion for Revised Scheduling Order**

The Motion for Revised Scheduling Order seeks to extend discovery dates by two months (but without affecting the final pretrial conference and trial dates). The motion, for the most part, has already been resolved by Chief Magistrate Judge Alba. On March 29, 2006, Alba issued an order granting in part the parties' stipulated revision. That is, he extended discovery and pre-trial dates with the exception of the dispositive motion cut-off date (currently May 31, 2006). (See Dkt #s 320, 286.)

In their stipulated motion, the parties asked the court to allow filing of dispositive motions at any time before July 31, 2006. But Judge Alba deferred on the question, as noted in

the minute entry ordering that counsel for the parties are "to contact Court if further scheduling [of a dispositive motion filing date] is necessary after Judge Campbell rules on outstanding motion." (Dkt # 319.)

Because fact discovery now ends on May 31, 2006, and expert discovery ends on July 31, 2006, the parties' request to extend the dispositive motion filing cut-off date to July 31, 2006, is granted. Given this extension, the court notes that it may not be able to keep the trial date in November 2006 if dispositive motions require more time than remains on the schedule. But for now, the final pretrial conference and trial dates remain unchanged.

## ORDER

For the foregoing reasons, the court GRANTS Kern River's Motion in Limine, its Motion for Partial Summary Judgment, and the Motion for Revised Scheduling Order. Specifically, the court ORDERS that:

1. The City may not present evidence to the jury of compensation based on future airport expansion, in particular a runway or other facilities, in the area of the Loop Line (as defined in Kern River's Mem. in Supp. at 4);

2. The City may not present evidence to the jury of compensation based on Loop Line relocation costs;

3. Kern River's taking of the City's property occurred on August 5, 2002.

4. Dispositive motions may be filed no later than July 31, 2006.

IT IS SO ORDERED this 22nd day of May, 2006.

        BY THE COURT:

        *Tena Campbell*

        TENA CAMPBELL
        United States District Judge